IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CAMERON ANDERSON,<br><br>                Plaintiff,<br><br>v.<br><br>ERIC J. HOUSTON, Deputy Sheriff; BARRY L. HUNTINGTON; SEAN D. REYES, Attorney General; MARIAN DECKER, Assistant Attorney General; GARFIELD COUNTY, and STATE OF UTAH<br>                Defendants. | **MEMORANDUM DECISION & ORDER ADOPTING, IN PART, REPORT AND RECOMMENDATION, AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:16-cv-00924<br><br>Judge Clark Waddoups |

Plaintiff Cameron Anderson, (Mr. Anderson) proceeding pro se, brings this action under 42 U.S.C. §§ 1983 and 1985 against (1) Sean D. Reyes, Attorney General of Utah; (2) Marian Decker, Assistant Attorney General of Utah; (3) the State of Utah (the court refers to Defendants 1–3 as the "State Defendants"); (4) Eric J. Houston, Garfield County Deputy Sheriff; (5) Barry L. Huntington, Garfield County Attorney; and (6) Garfield County (the court refers to Defendants 4–6 as the "County Defendants"). As explained below, the court adopts Magistrate Judge Furse's recommendation as to the State Defendants. The court dismisses the action as to the County Defendants for failure of service.

Background

On or about December 23, 2011 "on a cold late . . . evening," *State v. Anderson*, 2015 UT 90, ¶ 3, 362 P.3d 1232, 1234, Mr. Anderson "was traveling through Garfield County, State of Utah." (ECF No. 4-1 at 30.) "Around 10:00 p.m.," "Mr. Anderson pulled his car over to the side of a rural highway and turned on his hazard lights." *Anderson*, 362 P.3d at 1234. Mr. Anderson had a sleeping bag, coat, and other clothing in the car. (*See* ECF No. 18 at 18.)

"Two Garfield County sheriff's deputies," *id*. "Deputy Houston and Deputy Pollock," (ECF No. 4-1 at 86) "noticed Mr. Anderson's hazard lights while they were driving down the highway." *Anderson*, 362 P.3d at 1234. "Because of the hazard lights, the cold weather, and the late hour, the deputies decided to stop and check on the welfare of any occupants of the vehicle." *Anderson*, 362 P.3d at 1234. The deputies "pulled over to the side of the road behind Mr. Anderson" and "engaged the red and blue lights of their police vehicle." *Anderson*, 362 P.3d at 1234.

"When the deputies made contact with Mr. Anderson . . . they noticed that his eyes appeared to be bloodshot." *Id*. at 1234. "The deputies asked Mr. Anderson to exit his car, and he complied." *Id*. "He did not sway or move in a suspicious manner." *Id*. "The deputies asked Mr. Anderson to empty his pockets and he produced a pill bottle with a valid prescription." *Id*. "Mr. Anderson declined the deputies' request to complete a field sobriety test . . . ." *Id*. at 1235.

After Mr. Anderson declined the field sobriety test, Deputy Sheriff Houston arrested Mr. Anderson for suspicion of DUI. (*See* ECF No. 4-1 at 170 ("**Q.** So, what are you placing him under arrest for? **A.** Suspicion of DUI.").) One of the officers took Mr. Anderson to the jail at that time. (*See* ECF No. 4-1 at 170.) After the officers arrested Mr. Anderson, they "transported" his "vehicle" "by tow truck to the Sheriff's Office." (ECF No. 4-1 at 170.)

After Deputy Sheriff Houston had Mr. Anderson "in [his] custody," he sought a warrant. (*See* ECF No. 4-1 at 170.) Deputy Sheriff Houston "went to the [state] judge's house" to obtain the warrant. (*See* ECF No. 4-1 at 170.) A state judge issued the warrant. (*See* ECF No. 18 at 6.) The warrant established the existence of "probable cause for issuance of a search/arrest warrant." (ECF No. 18 at 5.) The warrant authorized the Deputy Sheriffs to "obtain blood or urine from the

body of" Mr. Anderson "to determine the controlled content thereof." (ECF No. 18 at 5.) The warrant also authorized the Deputy Sheriffs to "arrest" Mr. Anderson and "search his vehicle . . . ." (ECF No. 18 at 5.)

After "the warrant was issued" Deputy Sheriff Houston "[w]ent back to the jail where [Mr. Anderson] was being detained . . . ." (ECF No. 4-1 at 170.) The officers then got "a bodily fluid sample," from Mr. Anderson. (ECF No. 4-1 at 170.) The officers sent this sample to "MedTox Laboratories." (ECF No. 4-1 at 170.) Based on the record available to the court, MedTox received this sample on January 6, 2012. (*See* ECF No. 18 at 16.) The laboratory tested the sample and it returned "negative for all drugs including the prescription bottle that he had." (ECF No. 4-1 at 170; *see also* ECF No. 18 at 16.)

After the Deputy Sheriffs obtained "the bodily fluids," Deputy Sheriff Houston and two other deputies "went out to [Mr. Anderson's rental] vehicle and searched the vehicle." (*See* ECF No. 4-1 at 170.) The search of the vehicle "yielded marijuana and drug paraphernalia." *Anderson*, 362 P.3d at 1234.

At some point after the search, Mr. Anderson's rental car was transported from the Sheriff's Office to Bryce Canyon Towing. (*See* ECF No. 17 at 10.) The Bryce Canyon Towing lot was located approximately 22-miles from the Sheriff's Office. (ECF No. 4-1 at 19.) Mr. Anderson's sleeping bag, coat, and other clothing remained in the rental car. (*See* ECF No. 18 at 18.) The Sheriff's Office apparently made no effort to keep these items among Mr. Anderson's personal effects.

Mr. Anderson was released from the Sheriff's custody on December 24, 2011. (*See* ECF No. 4-1 at 19; *see also* ECF No. 17 at 10.) When "he was released from custody" he was

"wearing cotton jeans, sandals, and a t-shirt . . . ." (ECF No. 4-1 at 19.) The Garfield County "custodian[]" had "knowledge" that Mr. Anderson's rental car was located at Bryce Canyon Towing—22 miles away, but nevertheless instructed him to make the trip on his bicycle. (*See* ECF No. 4-1 at 19; *see also* ECF No. 17 at 10 ("Further upon release from jail on the 24th of December 2011 mid-day, Anderson was given his bicycle and told to ride from the current location, 22 miles up to the Bryce Canyon Towing impound lot where the rental car (current shelter) had been stored . . . .").) Mr. Anderson "thus rode his bicycle until [he was] offered a ride . . . ." (ECF No. 4-1 at 19.) The temperature that day was "at or below 7 degrees." (ECF No. 4-1 at 19.) Mr. Anderson made the trip in order to "retrieve his warm clothing, tools, spare tubes, bicycle repair kit, food[,] and other belongings," (ECF No. 17 at 10) including a sleeping bag. (ECF No. 18 at 18.)

"The State [later] charged Mr. Anderson with possession of less than an ounce of marijuana and possession of drug paraphernalia." *State v. Anderson*, 2015 UT 90, ¶ 6, 362 P.3d 1232, 1235. Mr. Anderson moved to suppress the evidence obtained in his vehicle, but the district court denied the motion, concluding that the "stop was justified by the community caretaking doctrine." *Id*. "A jury subsequently found Mr. Anderson guilty of possessing marijuana and drug paraphernalia." *Id*. Mr. Anderson then appealed to the Utah Supreme Court. *Id*.

On October 28, 2015, the Utah Supreme Court issued an opinion affirming Mr. Anderson's conviction. *See id*. at 1240. The Utah Supreme Court "conclude[d] that the community caretaking doctrine justified the stop" and held that "the seizure did not violate the Fourth Amendment." *Id*. at 1234. In reaching this conclusion, the Utah Supreme Court

"conclude[d] that a reasonable officer would have cause to be concerned about the welfare of a motorist in Mr. Anderson's situation," in large part because of the subfreezing temperature. *See id*. at 1240.

On January 26, 2016, Mr. Anderson filed a Petition for a Writ of Certiorari with the United States Supreme Court. (*See* ECF No. 4-1 at 22.) The United States Supreme Court denied Mr. Anderson's petition for writ of certiorari on or around May 16, 2016.

On September 1, 2016, Mr. Anderson filed, in this court, a Motion for Leave to Proceed in forma pauperis. (ECF No. 1.) On September 12, 2016, Magistrate Judge Pead entered an Order granting that Motion. (ECF No. 3.) On September 4, 2016, Mr. Anderson filed a Complaint. (ECF No. 4.) The case was assigned to Judge Parrish on that date. (ECF No. 4.)

In his Complaint, Mr. Anderson alleged that each of the six defendants named above violated his "4th Amendment Right to Privacy." (*See* ECF No. 4 at 2–3.) Mr. Anderson's attachment to the Complaint details some of the facts surrounding his December 23, 2011 arrest in Garfield County described above. (*See* ECF No. 4-1.)

In describing the nature of the case, Mr. Anderson stated: "Please note the Writ of Certiorari enclosed within the package which explains how the Deputy Sheriff Houston put me in harms way and caused monetary damages in detaining, illegally searching, seizing my property, and then releasing me without my warm weather clothing in the dead of winter." (ECF No. 4 at 3.) Included as an attachment to the Complaint was, among other things, his Petition for Writ of Certiorari to the United States Supreme Court. (*See* ECF No. 4-1 at 1–22.) In this Petition, Mr. Anderson described how "he was released from custody wearing cotton jeans, sandals, and a t-shirt with the custodian's knowledge that he had to ride [his] bicycle 22 miles

from 6650 feet up to 7500 feet in the dead of Utah's winter to retrieve his belongings out of the seized rental car putting him in harm's way." (ECF No. 4-1 at 19.)

Mr. Anderson listed two causes of action in his Complaint. (*See* ECF No. 4 at 4.) The first was for a "breach of [his] 4th Amendment Right to Privacy." (ECF No. 4 at 4.) The second was for "breach of [his] freedom of movement under United States Law." (ECF No. 4 at 4.)

On September 26, 2016, Judge Parrish referred the case to Magistrate Judge Furse under 28 U.S.C. § 636(b)(1)(B). On August 7, 2017, the State Defendants filed a Motion to Dismiss Mr. Anderson's Complaint "pursuant to Federal Rule of Civil Procedure 12(b)(6)." (ECF No. 10 at 2.) On February 1, 2018, Judge Parrish entered an Order of Recusal, and the case was reassigned to the undersigned on that day. On February 26, 2018, Magistrate Furse entered a Report and Recommendation.

Mr. Anderson did not file an Objection to the Report and Recommendation within the time allowed under the Federal Rules of Civil Procedure. Mr. Anderson's objection was due on March 16, 2018. On March 29, 2018, Mr. Anderson emailed chambers a "Motion for Extension of Time to File a Response" to the Report and Recommendation. This Motion was entered on March 30, 2018. (ECF No. 14.) The court, in the interest justice, granted Mr. Anderson's Motion for an extension. (ECF No. 16.) On April 10, 2018, Mr. Anderson's Objection to the Report and Recommendation was entered. (ECF No. 17.) In his Objection, Mr. Anderson "request[ed] that the court appoint local counsel for assistance with the construction and completion of [the] legal process . . . ." (ECF No. 17 at 10.) Mr. Anderson's Motion for Summary Judgment was also entered on this date. (ECF No. 18.) On May 9, 2018, the State Defendants filed an Opposition to Mr. Anderson's Motion for Summary Judgment. (ECF No. 19.)

6

Analysis

When a magistrate judge issues a Report and Recommendation on a dispositive issue, the "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). As noted above, in in the interest of justice, the court allowed Mr. Anderson to file an objection to the Report and Recommendation. The court will therefore conduct a de novo review of Mr. Anderson's Objection. The court addresses Mr. Anderson's claims against **(I)** the State Defendants separately from his claims against **(II)** the County Defendants.

I. State Defendants

The State Defendants filed a Motion to Dismiss under Rule 12(b)(6). (*See* ECF No. 10.) To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'" *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In reviewing a motion to dismiss, the court accepts as true the well-pled factual allegations and views the allegations in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013). "[A] plaintiff must offer specific factual allegations to support each claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (citing *Twombly*, 550 U.S. at 555). A complaint survives only if it "'states a plausible claim for relief,'" though courts

recognize that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *Id*. at 1214–15 (quoting *Iqbal*, 556 U.S. at 679).

Because Mr. Anderson is "proceeding pro se," the court "construe[s] his pleadings liberally." *Counce v. Wolting*, No. 18-3056, 2019 WL 140998, at *2 (10th Cir. Jan. 9, 2019) (citation omitted) (internal quotation marks omitted). "[T]his rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff *could* prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (emphasis added); *see also Counce*, 2019 WL 140998, at *2 (The court "make[s] some allowances for deficiencies, such as unfamiliarity with pleading requirements, failure to cite appropriate legal authority, and confusion of legal theories.").

The court addresses (A) Mr. Anderson's Section 1983 Claims against the State Defendants, (B) his Section 1985 Claims against the State Defendants, and (C) his claim for habeas relief under Section 2254.

A. <u>Mr. Anderson's 1983 Claims Against the State Defendants</u>

"Section 1983 itself does not create any substantive rights, but merely provides relief against those who, acting under color of law, violate federal rights created elsewhere." *Reynolds v. Sch. Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1536 (10th Cir. 1995). "That is, § 1983 is a remedial vehicle for raising claims based on the violation of constitutional rights." *Brown v. Buhman*, 822 F.3d 1151, 1162 n. 9 (10th Cir. 2016). "There can be no 'violation' of § 1983 separate and apart from the underlying constitutional violations." *Id*. (citation omitted).

8

In her Report and Recommendation, Magistrate Judge Furse's analysis regarding Mr. Anderson's Section 1983 claim addressed his alleged Fourth Amendment violation. (*See* ECF No. 13 at 9.) Judge Furse recommended that the court dismiss without prejudice "Mr. Anderson's § . . . 1983 . . . claims against the State . . . Defendants on the grounds that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars those claims . . . ." (*See* ECF No. 13 at 23.) As explained below, the court agrees that *Heck* bars Mr. Anderson's Section 1983 claims related to violations of his Fourth Amendment rights.

The Supreme Court has "repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation." *Herring v. United States*, 555 U.S. 135, 141, 129 S. Ct. 695, 700, 172 L. Ed. 2d 496 (2009). While "[e]vidence obtained due to a violation of the Fourth Amendment *generally* is inadmissible in a criminal trial under the exclusionary rule," there are exceptions. *United States v. Ortiz-Cervantes*, 868 F.3d 695, 702 (8th Cir. 2017) (emphasis added). In *Heck*, the Supreme Court specifically mentioned two such exceptions—the "independent source" doctrine and the "inevitable discovery" doctrine. *Heck*, 512 U.S. at 487 n. 7. These exceptions to the exclusionary rule necessarily involve an unconstitutional act on the part of law enforcement. *See Utah v. Strieff*, 136 S. Ct. 2056, 2061, 195 L. Ed. 2d 400 (2016) ("these exceptions involve the causal relationship between the unconstitutional act and the discovery of evidence."); *United States v. Stokes* 733 F.3d 438, 444 (2d Cir. 2013) ("the inevitable discovery doctrine . . . provides that the fruits of an illegal search or seizure are nevertheless admissible at trial if . . . ."); *United States v. Restrepo*, 966 F.2d 964, 969 (5th Cir. 1992) (Under the independent source doctrine, "even if police engage in unconstitutional

activities . . . evidence discovered during such illegal activities is nonetheless admissible if it is also discovered through an independent source.").

As Judge Furse correctly noted, the Supreme Court in *Heck* made clear that "because of doctrines like independent source and inevitable discovery" a § 1983 "suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state trial resulting in the § 1983 plaintiff's still-outstanding conviction." *Heck*, 512 U.S. at 487 n.7. This is because doctrines like inevitable discovery and the independent source doctrine allow evidence—in certain cases—to be admitted even where a Fourth Amendment violation occurs.

The Sixth Circuit, in an unpublished opinion, has provided that "*Heck* bars § 1983 Fourth Amendment claims where the contested evidence produced the only evidence supporting the conviction *and* no legal doctrine could save the evidence from exclusion." *Harper v. Jackson*, 293 F. App'x 389, 392 (6th Cir. 2008) (emphasis added and removed). The court agrees that *Heck* bars § 1983 claims where (1) the contested evidence produced the only evidence supporting the conviction and (2) a legal doctrine—like the independent source doctrine or the inevitable discovery doctrine—was not used to save the evidence from exclusion. *See Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 862 (7th Cir. 2004) ("It is true that a conviction can often stand, despite the fact that police may have obtained evidence without probable cause or a warrant in violation of the Fourth Amendment. The availability of other evidence to support a conviction or, as the Court itself noted in *Heck,* the applicability of the inevitable discovery and independent source doctrines, which allow the use of evidence even though it was illegally obtained, make such an outcome more than a possibility."))

The Utah Supreme Court's decision in *State v. Anderson*, 2015 UT 90, 362 P.3d 1232 makes clear that the evidence in Mr. Anderson's case was not admitted pursuant to a legal doctrine similar to inevitable discovery or the independent source doctrine. Instead, the Utah Supreme Court held that "the community caretaking doctrine justified the stop under the facts of [Mr. Anderson's] case . . . ." *Id*. at 1234. Unlike inevitable discovery or the independent source doctrine, the community caretaking doctrine does not presuppose an unconstitutional act on the part of law enforcement. Indeed, the Utah Supreme Court, applying the community caretaking doctrine, specifically held that the initial seizure did not violate the Fourth Amendment. *State v. Anderson*, 362 P.3d at 1234 (we . . . hold that the seizure did not violate the Fourth Amendment.").

Because the contested evidence was the only evidence produced supporting the conviction, because Mr. Anderson's initial seizure did not violate the Fourth Amendment, and because those legal doctrines similar to inevitable discovery and the independent source doctrine have no applicability in Mr. Anderson's case, a judgment in Mr. Anderson's favor on his § 1983 Fourth Amendment claims would necessarily imply the invalidity of his conviction and sentence. The court agrees with Judge Furse's recommendations that *Heck* bars Mr. Anderson's § 1983 claims as to his Fourth Amendment violations. Mr. Anderson's § 1983 claims against the State Defendants are DISMISSED without prejudice.

In her Report and Recommendation, Magistrate Judge Furse also stated that "the District Court could . . . dismiss Mr. Anderson's § 1983 claim against the State of Utah without prejudice on sovereign immunity grounds." (ECF No. 13 at 15.) The court agrees.

Magistrate Judge Furse also stated that the District Court could dismiss Mr. Anderson's § 1983 claims against Attorney General Reyes and Assistant Attorney General Decker "on the grounds that prosecutorial immunity bars his claims." (ECF No. 13 at 17.) The court agrees.

For these reasons, Mr. Anderson's § 1983 claims against the State Defendants are dismissed without prejudice.

B.  Mr. Anderson's Section 1985 Claims Against the State Defendants

Magistrate Judge Furse recommended that the court dismiss Mr. Anderson's § 1985 claims against the State Defendants without prejudice since *Heck* bars them. The court agrees. Mr. Anderson's § 1985 claims are DIMISSED without prejudice.

Judge Furse also stated that "the District Court could . . . dismiss Mr. Anderson's § 1985 claims against the State . . . Defendants for failure to plead any facts in support of [those] claims." (ECF No. 13 at 20.) The court agrees.

C.  Section 2254 Habeas Relief

The court agrees with Judge Furse that because Mr. Anderson did not allege facts demonstrating that he was in custody, his claim for habeas relief must be dismissed. Mr. Anderson's claim for § 2254 against the State Defendants is DISMISSED without prejudice.

All claims against the State Defendants are dismissed without prejudice.

II.     County Defendants

Magistrate Judge Furse recommended that the court dismiss Mr. Anderson's §§ 1983 and 1985 claims against the County Defendants on the grounds that *Heck* bars those claims. In her Report and Recommendation, Magistrate Judge Furse's analysis regarding Mr. Anderson's Section 1983 claim against the County Defendants addressed only his alleged Fourth

Amendment violation. (*See* ECF No. 13 at 9.[1]) But, construing the Complaint liberally, and viewing the Complaint's allegations in the light most favorable to Mr. Anderson, he appears to have alleged two separate and distinct constitutional violations—(1) a violation of his Fourth Amendment Rights and (2) a violation of his "freedom of movement under United States law." (*See* ECF No. 4 at 4.)

In his Complaint, Mr. Anderson included a second cause of action—separate and apart from the alleged Fourth Amendment Violations—entitled "Breach of my Freedom of Movement Under United States Law." (ECF No. 4 at 4.) In this section of the Complaint, Mr. Anderson specifically referenced the "Appellant Brief and Writ of Certiorari enclosed." (ECF No. 4 at 4.) Additionally, when describing the "nature of the case," Mr. Anderson stated: "[p]lease note the Writ of Certiorari enclosed . . . which explains how the Deputy Sheriff Houston put me in harms way and caused me monetary damages in detaining, illegally searching, seizing my property, *and then releasing me without my warm weather clothing in the dead of winter*." (ECF No. 4 at 3 (emphasis added).) In the Petition for Writ of Certiorari, Mr. Anderson stated:

> [t]he intent of the 'community caretaker doctrine,' is for the public safety. In a cruel ironic twist, [Mr. Anderson] was released from custody wearing cotton jeans, sandals, and a t-shirt with the custodian's knowledge that he had to ride [his] bicycle 22 miles from 6650 feet up to 7500 feet in the dead of Utah's winter to retrieve his belongings out of the seized rental car putting him in harms way.

(ECF No. 4-1 at 19.)

As evidence to support this claim that he had to "retrieve his warm clothing" from the rental car, Mr. Anderson provided the Vehicle Impound Report that was issued as a result of the

---

[1] (ECF No. 13 at 9 ("Viewing the Complaint's allegations in the light most favorable to Mr. Anderson, the § 1983 claims for monetary damages against the State and County Defendants appear premised on alleged violations **of the Fourth Amendment** arising out of the December 2011 traffic stop.") (emphasis added)).

traffic stop at issue. (ECF No. 18 at 18.) The Vehicle Impound Report provides that the following items, among others, were listed as "property in vehicle:" "coat," "clothing," and a "sleeping bag." (ECF No. 18 at 18.) Rather than a violation for his "freedom of movement," the facts Mr. Anderson described could possibly be characterized as a Fourteenth Amendment due process violation. *C.f. Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1085 (9th Cir. 2000).

As a general rule, a state actor is not liable under the Due Process Clause for its omissions. *See DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *Bishop v. Szuba*, 739 F. App'x 941, 943 (10th Cir. 2018); *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000). But there are two exceptions to this general rule: '(1) the special relationship doctrine; and (2) the 'danger creation' theory.'" *Bishop*, 739 F. App'x at 943 (quoting *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995)).

Because Mr. Anderson is a pro se litigant, the court would normally read Mr. Anderson's pleadings liberally to determine whether he had stated a claim that "could prevail." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But as Magistrate Judge Furse noted, "[n]o return of service appears in the record for the County Defendants . . . and . . . they have not appeared to defend in this case." (ECF No. 13 at 7.) In his Objection, Mr. Anderson did not address the fact that no return of service appears in the record for the County Defendants. (*See* ECF No. 17.) The Federal Rules of Civil Procedure provide that "[i]f a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service

be made within a specified time." Fed. R. Civ. P. 4(m). Magistrate Judge Furse put Mr. Anderson on notice that no return of service appeared on the record. Because the County Defendants were not served within 90 days after the complaint was filed, the court DISMISSES the action without prejudice against the County Defendants.

Because the court dismisses the action against the County Defendants, the court need not resolve whether Mr. Anderson has plausibly stated a claim for a Fourteenth Amendment due process violation. Because the court dismisses the action without prejudice, however, Mr. Anderson is free to refile a complaint.

III.   Attorney Representation

Because the court dismisses the action, Mr. Anderson's request for an attorney is MOOT.

IV.   Motion for Summary Judgment

As noted above, Mr. Anderson filed a Motion for Summary Judgment. (ECF No. 18.) Because the court dismisses Mr. Anderson's action, the court denies the Motion as MOOT.

Conclusion

The court orders as follows:

I.   The court adopts Magistrate Judge Furse's Report and Recommendation in part.
   a. All claims against the State Defendants are DISMISSED.
   b. The court dismisses the action against the County Defendants for failure of service.

II.   Mr. Anderson's request for an attorney is DENIED.

III.   Mr. Anderson's Motion for Summary Judgment, (ECF No. 18.) is DENIED without prejudice.

DATED this 4th day of February, 2019

                                        BY THE COURT:

                                        Clark Waddoups
                                        United States District Judge